## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| STAGE 3 SEPARATION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | DOCKET NO. 4:17-cv-3787 |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT RHONEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Stage 3 Separation, LLC ("Stage 3") and brings this Complaint against Defendant Scott Rhoney for injunctive relief and damages, showing the Court as follows:

### SUBJECT MATTER JURISDICTION

1.      This Court has proper jurisdiction of the subject matter of this action under 28 U.S.C. § 1331 in that this action arises under the laws of the United States, specifically the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and the Stored Communications Act, 18 U.S.C. § 2701. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

### PERSONAL JURISDICTION AND VENUE

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district and because Rhoney may be found in this district.

3.      This Court has personal jurisdiction over Rhoney because he resides in Texas and because Rhoney's actions in this forum give rise to the claims asserted herein.

1

## PARTIES

4.      Plaintiff Stage 3 is a limited liability company organized and existing under the laws of the State of Texas.

5.      Stage 3 specializes in high quality solids control equipment designed for closed loop mud systems to effectively manage solids, reducing costs for the operator and providing limited or zero discharge solutions as necessary. Stage 3 deploys trained technicians to assist and service its customers in the oil and gas industry at the rig site. Additionally, Stage 3 uses technical advisors to advise its oil company customers how to best manage each job for efficiency and cost savings.

6.      Much of Stage 3's business is conducted via a series of computers, networks, servers, and databases, which are connected to each other and the internet.  These computers, networks, servers, and databases are used by Stage 3 in conducting interstate commerce.

7.      Upon information and belief, Rhoney is an individual resident of the State of Texas. He may be served with process at his residence in Harris County, or wherever he may be found.

8.      Until his termination on October 23, 2017, Rhoney was Stage 3's Network Administrator.

## FACTS

9.      On or around November 10, 2014, Stage 3 hired Rhoney as its Network Administrator.

10.     Rhoney was the only member of Stage 3's IT Department focused on network administration and network security.

2

11.    As Network Administrator, Rhoney had administrator access rights to Stage 3's computer network. These access rights allowed Rhoney to create new accounts, change passwords, and grant access rights to Stage 3's confidential and proprietary information.

12.    As Network Administrator, Rhoney was given full administrator access to Stage 3's computer networks and databases for the sole and limited purpose of furthering Stage 3's business.

13.    Rhoney's access to Stage 3's computer networks and databases gave him access to all of Stage 3's confidential information and trade secrets, including Stage 3's technology, data analyses, business strategies, pricing, financial information, personal employee information, and customer information.

14.    As Network Administrator, Rhoney was placed in a position of trust and responsibility.

15.    As Network Administrator, Rhoney was responsible for the back-up and security of Stage 3's computer network.

16.    In his IT role, Rhoney had the authority to order computers and related equipment on behalf of Stage 3.

17.    On March 1, 2017, Rhoney ordered an iMac 27" 32GB Computer (the "Computer"), costing $3,674.75, and charged it to Stage 3's account. (*See* Exhibit A). Rhoney had the Computer delivered to his home address.

18.    This Computer was to be used for Stage 3's business only.  Rhoney was not permitted to use Stage 3 funds to buy computer equipment for any purpose other than Stage 3's business, including his personal use.

19.     Stage 3 uses a program called Team Viewer, which allows for remote access to Stage 3's computers, networks, and databases.

20.     Stage 3 has a corporate Team Viewer account.

21.     With its corporate account, Stage 3 has the right to place Team Viewer on all of its company computers.

22.     Once Team Viewer is installed on a computer, other computers can be given remote access rights to that computer through a Team Viewer application on the remote computer.

23.     Team Viewer then allows a user to login remotely to the computer and gives them control over the computer.

24.     Rhoney was assigned the highest-level administrator access rights to Stage 3's Team Viewer account. This means that when he logged into Team Viewer from his computer, Rhoney was able to access *every* Stage 3 computer. Rhoney could pick which computer to gain remote access to.

25.     Up until 2013, Stage 3's corporate office was located at 5101 Maxie Street, Houston, Texas.

26.     In 2013, Stage 3 moved its corporate office to 2000 Silber Road, Houston, Texas.

27.     The former corporate office located at 5101 Maxie Street, referred to herein as the "Maxie building", is still used by Stage 3 for storage and to house certain computers.  There are no employees who work out of the Maxie building on a day-to-day basis.

28.     There is a computer in the Maxie building (the "Maxie Computer") that is connected to Stage 3's computer network.

29.     The Maxie Computer was installed and set up by Rhoney, and has since been used to manage the firewall at the Maxie building. The Maxie Computer is not actively monitored by anyone at Stage 3.

30.     Rhoney's employment was terminated by Stage 3 on or about October 23, 2017.

31.     On October 23, 2017, the date of Rhoney's discharge, Rhoney's rights to access Stage 3's computer network and server ended. Stage 3 instructed Rhoney to surrender all of his passwords, user names, and administrator rights to all Stage 3 applications and computer networks, and specifically to return his access rights to Team Viewer.

32.     Rhoney failed to surrender his administrator rights despite being requested to do so several time by Vice President of Administration Matt Carlson.

33.     Instead, Rhoney kept passwords, user names, and other information necessary to access Stage 3 computers and networks, even though he no longer worked for Stage 3 and his right and authority to access those computers and networks had been terminated.

34.     By failing to surrender his administrator rights and passwords, Rhoney deprived Stage 3 of administrator-level access to Team Viewer because only Rhoney knew the password.

35.     Upon termination of his employment, Stage 3 instructed Rhoney to return the Computer.

36.     Rhoney told Mr. Carlson that he had shipped the Computer back to the manufacturer because it was broken.

37.     Mr. Carlson asked Rhoney to provide him the shipping information so that he could confirm that the Computer was shipped to the manufacturer.

38.     Rhoney never provided any shipping information and to date, has not returned the Computer.

39.     The manufacturer from whom the computer was purchased confirmed that it was not returned.

40.     Rhoney did not return the Computer back to Stage 3.

41.     Upon information and belief, Rhoney ordered the Computer for his personal use, and not for any legitimate Stage 3 business purpose.  In other words, Rhoney appears to have embezzled over $3,600 from Stage 3 to buy himself a computer.  Stage 3 was not aware of Rhoney's intentions with regard to the Computer when Rhoney purchased it.

42.     Upon information and belief, the Computer that Rhoney refused to return was one of the computers that had been given remote access rights to Stage 3's computer networks through Team Viewer.

43.     Upon information and belief, the access rights for the Computer that Rhoney refused to return were administrator access rights that allowed the user of that Computer to gain access to every Stage 3 computer that was associated with the corporate Team Viewer account.

### Discovery of Rhoney's Unauthorized Access to its Computer Network

44.     Since his employment terminated, Rhoney has, without any right and in violation of express instruction, accessed Stage 3's computers, networks, servers, and/or databases (collectively, Stage 3's "Computer Network") on no fewer than **18 separate occasions**. (*See* Exhibit B).

45.     Rhoney's unauthorized access of Stage 3's Computer Network was discovered on December 1, 2017.

46.     On December 1, 2017, Rhoney tried to change the administrative rights to one of Stage 3's software licenses to Rhoney's personal email from Rhoney's former Stage 3 email. (*See* Exhibit C).

47. The software vendor alerted Stage 3 that a password reset request had been sent by Rhoney. (*See* Exhibit D).

48. The software vendor sent an email to a former Stage 3 email account created by Rhoney (the one that had been affiliated with the administrative rights) asking for verification of the password change request. (*See* Exhibit E).

49. Rhoney could only approve the change of administrator rights through the Stage 3 email account, as is shown in Exhibit E by the email from the software vendor to Stage 3's IT Licenses email address.

50. However, Rhoney could not lawfully access his Stage 3 emails because his right to do so terminated when his employment terminated on October 23.

51. Without permission from Stage 3, Rhoney logged into Team Viewer from his home and then used a backdoor through the Maxie Computer – which Rhoney knew was not actively monitored – to gain access to Stage 3's computer network.

52. The IP address used to access Stage 3's Computer Network is the same IP address Rhoney used during his employment to send emails from his personal account to his work email and is the same IP address he used to remotely access his work emails during his employment.

53. Once he gained access to the Maxie Computer, Rhoney assumed the credentials of an administrator service account for one of Stage 3's databases so that he could access the inner workings of Stage 3's email server and grant himself access to his former email account.

54. This would allow Rhoney to logon to his Stage 3 email account to approve the change of administrator rights for the software vendor from Stage 3 to Rhoney's personal email.

55. The emails from the software vendor alerted Stage 3 to suspicious activity on its Computer Network.

56.     Stage 3 then investigated access to its server and logged access through Team Viewer to the Maxie Computer.

57.     Stage 3 reviewed the access logs, which revealed that Rhoney had been repeatedly accessing Stage 3's Computer Network since his termination.

58.     Stage 3 then engaged an outside vendor to conduct a thorough forensic examination, which has cost thousands of dollars and well over $5,000.

59.     The investigation revealed that since Rhoney's termination on October 23, 2017, Rhoney had accessed Stage 3's Computer Network (and specifically the Maxie Computer that Rhoney knew was not actively monitored) at least 18 times, most often over the Thanksgiving weekend when there would be no one at the office to catch him trespassing in Stage 3's Computer Network.

60.     Rhoney stayed logged in to the Maxie Computer for as long as 17 or 18 hours at a time.

61.     Once he was logged into the Maxie Computer through Team Viewer, Rhoney created a way to gain access to Stage 3's infrastructure server.

62.     Rhoney had to use "service accounts" with administrator rights and other back-door means to gain access to Stage 3's Computer Network because his own access rights and credentials had been terminated when his employment was terminated in October 2017.

63.     Rhoney was aware of the service accounts from his time working as an IT employee, and refused to surrender access to those accounts when he was asked at his termination.

64.     Rhoney was able to hide his tracks by using these service accounts to gain access to Stage 3's server.

65. On November 15, 2017, Rhoney logged into the Maxie Computer six times for a total of over three hours.

66. During these November 15, 2017 login sessions, there were multiple attempts to set up the Maxie Computer to interface with Stage 3's infrastructure server by setting up remote administrative tools.

67. Also during a login on November 15, 2017, Rhoney used a service account setup for Stage 3's SQL database to map the infrastructure server to the Maxie Computer. The infrastructure server houses all user accounts and Stage 3's exchange email server.

68. Mapping this drive provided Rhoney quick access to the infrastructure server's folders and files. Essentially, this provided Rhoney with "backdoor" access to everything on the server.

69. During one of these November 15 logins, Rhoney used Ccleaner, which is an application used to remove user activity from the computer.

70. Upon information and belief, Rhoney's use of Ccleaner on November 15 was to destroy evidence of what he had been doing on Stage 3's computer networks.

71. On November 24, 2017 (which was the day after Thanksgiving, when no one would be monitoring his activity), Rhoney logged into the Maxie Computer through Team Viewer four times, with three of those logins lasting between one and two hours.

72. On November 24, 2017, Rhoney attempted to set up the Maxie Computer to interface with Stage 3's email exchange server. This time he was successful; Rhoney downloaded an exchange console to the Maxie Computer, which gave Rhoney an easy access backdoor into Stage 3's email exchange server.

73. On November 24, during one of his surreptitious logins, Rhoney accessed a zip folder named Cleanmgr_w7, which contains a script that is run to clear a program called Prefetch.

74. Prefetch is a way to determine what programs have been run previously.

75. By running the script in the Cleanmgr_w7 zip folder, Rhoney covered his tracks and deleted records of his activity during nearly five hours that he spent logged in to Stage 3's computer network.

76. Rhoney then accessed Stage 3's Computer Network at least three more times over the Thanksgiving weekend, spending over 17 hours logged in to Stage 3's Computer Network on Sunday, November 26.

77. On November 26, 2017, Rhoney mapped Stage 3's accounting software server to the Maxie Computer, giving himself ready access to Stage 3's accounting information.

78. On November 30, 2017, Rhoney again logged into the Maxie Computer and mapped or copied a co-worker's computer to the Maxie Computer. This gave Rhoney access to everything on the coworkers' computer and allowed Rhoney to browse the folders as if he was sitting in front of that computer.

79. **Troublingly, the coworker is employed in Stage 3's accounting department, meaning that Rhoney was looking through a computer that contained Stage 3's most sensitive financial data**.

### *Stage 3 Reports Rhoney's Hacking to the Authorities*

80. On December 5 2017, after discovery of Rhoney's unauthorized access, Stage 3 contacted the Houston Police Department to report the apparent unauthorized use of its Computer Network and the theft of the Computer.

81.     After Stage 3 contacted the Houston Police Department, Counsel for Stage 3 also sent a letter (attached as Exhibit F) to Rhoney's counsel demanding that he cease illegally accessing Stage 3's Computer Network and that Rhoney surrender Stage 3's administrative passwords. Specifically, the letter stated that Rhoney "must CEASE AND DESIST his unlawful access into Stage 3 Separation's computer network. We have recently learned that Mr. Rhoney…is continuing to access Stage 3's computer network…"

82.     The Letter also demanded that Rhoney surrender his rights to Team Viewer and return the Computer.

83.     Rhoney did not comply with Stage 3's request.

84.     In a letter dated December 7, 2017, Rhoney's counsel claimed that "you and S3S should rest assured that Mr. Rhoney has not violated the Computer Fraud And Abuse Act or any other federal or state law before or after S3S terminated his employment on October 23, 2017, and has no intention of doing so" and that "Mr. Rhoney does not possess any S3S computer"

85.     Further, on December 7, 2017, Counsel for Rhoney "categorically denied" any illegal access to Stage 3's computer and failed to surrender the passwords and administrative rights.

86.     On December 8, 2017, Counsel for Stage 3 provided Counsel for Rhoney with proof of the illegal access. Specifically, Stage 3 sent to Rhoney's counsel a log of Rhoney's access of Stage 3's computer network since his termination, which demonstrated the specific dates and times that Rhoney remotely accessed Stage 3's computer network since his termination on October 23, 2017.

87.     Within a few hours of receiving Counsel for Stage 3's December 8, 2017, letter, Rhoney surrendered his access rights to Team Viewer.

88.     Rhoney unlawfully kept his access rights to Team Viewer for nearly two months after his termination, used them repeatedly to unlawfully gain access to Stage 3's Computer Network (which he tried to hide by using the Maxie Computer and using specially designed "wiping" software to cover his tracks), and then lied to cover his tracks by "categorically" denying that he had these rights.

89.     Even after having been given irrefutable proof of Rhoney's unlawful access of Stage 3's Computer Network, Counsel for Rhoney continued to deny access to Stage 3's computer network.

90.     As has been uncovered by Stage 3's investigation, this was all a lie designed to further cover-up Rhoney's unlawful hacking of Stage 3's computers.

91.     Having been provided conclusive proof of the unlawful access to Stage 3's computer network, Rhoney retaliated by filing a frivolous defamation complaint against Stage 3 in the District Court for Harris County, Texas. (*See* Complaint attached as Exhibit G).

92.     The Complaint, which alleges defamation based on Stage 3's report of Rhoney's unlawful conduct to the Houston Police Department, is barred by binding authority from the Texas Supreme Court.  *See Shell Oil Co. v. Writt*, 464 S.W.3d 650 (Tex. 2015) (finding an absolute privilege to defamation when a company reports the unlawful conduct of one of its workers to law enforcement).

93.     Rhoney then doubled-down on his original lie and, on December 11, claimed that he did not access Stage 3's network, despite conclusive proof that the IP address from Rhoney's home network was used to access the Maxie Computer through Team Viewer.

94.     Rhoney's lies and cover-up of his illegal access to Stage 3's computer networks are proof positive that Rhoney cannot be trusted to simply stop using his IT expertise to continue

hacking in to this former employer's computer networks.   **An injunction from this Court is necessary to put a stop to Rhoney's unlawful hacking**.

### *Rhoney's Unauthorized Access of Email Accounts*

95.    Stage 3's investigation also revealed that on eight different days since his termination, Rhoney attempted to access his email account through Outlook Web Access ("OWA"). OWA allows individuals to login to Outlook from an internet browser and. Outlook is an email service from Microsoft used by Stage 3 to send, receive, and store emails.

96.    Stage 3's investigation also revealed that Rhoney attempted to access email accounts belonging to Stage 3's President, Fred Lausen, and Stage 3's Vice President of Administration, Matt Carlson, through OWA.

97.    Rhoney gained access to his email account on at least eight occasions.

98.    Upon information and belief, Rhoney gained access to Fred Lausen's and Matt Carlson's email accounts on November 12, 2017.

99.    All of these email accounts contain extremely sensitive Stage 3 information, including privileged communications with counsel, personal and corporate financial information, and Stage 3 trade secrets.

### *All of Stage 3's Information Has Been Exposed*

100.    Between the email exchange server, the Maxie Computer, the Computer, Rhoney's own former Stage 3 email account, and the email accounts of Mr. Lausen and Mr. Carlson, Rhoney has obtained unauthorized access to the repositories of all of Stage 3's most sensitive and confidential information and trade secrets.

101.    The information to which Rhoney gained unlawful access is worth hundreds of thousands, if not millions, of dollars.

102.    While Stage 3's investigation is ongoing, there is no way to know what information Rhoney has managed to access and what Rhoney has done with that information.  At a minimum, Rhoney was snooping through the emails of Stage 3's President and Vice President and the computer of one of Stage 3's accounting employees.

103.    Because of his former high-ranking position in the IT department (and by virtue of his refusal to surrender those access rights on the termination of his employment), Rhoney had access to *every single* Stage 3 computer on the Team Viewer corporate account. He was able to pick and choose which computer to login to on any given day. It is possible that he accessed every Stage 3 computer.

104.    In short, the confidentiality and integrity of Stage 3's information has been compromised by Rhoney's hacking in to its Computer Network repeatedly throughout the month of November 2017.

105.    In short, an unauthorized third party gained access to all of Stage 3's most sensitive information and then lied to cover his tracks.

106.    An Order from this Court appears to be the only way for Stage 3 to protect itself from the repeated hacking attempts of its former Network Administrator.

## COUNT I

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

107.    Stage 3 repeats and re-alleges the allegations set forth in Paragraphs 1-106 above, as if the same were set forth fully herein.

108.    After Stage 3 terminated Rhoney's employment, he accessed Stage 3's computer network at least 18 times, each time without authorization.

109.     During his employment with Stage 3, Rhoney had access to Stage 3's Computer Network for legitimate Stage 3 business purposes only. Upon his termination of employment, this limited permission for access ended.

110.     Any access by Rhoney of Stage 3's Computer Network after his employment terminated was entirely without authorization.

111.     Rhoney's access of Stage 3's Computer Network at least 18 times after his termination, without Stage 3's authorization and without any business purpose, constitute violations of the Computer Fraud and Abuse Act.

112.     When Rhoney accessed Stage 3's computer server he acted without authorization from Stage 3.

113.     To the extent Rhoney was authorized to use Stage 3's computer network, this authority ended upon his termination. Thus, any access by Rhoney after his termination exceeded any authority he may have previously held.

114.     When Rhoney accessed Stage 3's computer server he did so knowingly and with intent to defraud Stage 3.

115.     Rhoney continues to unlawfully maintain and use access to Stage 3's computer network.

116.     Stage 3 has a civil claim against Rhoney under the Computer Fraud and Abuse Act ("**CFAA**"), 18 U.S.C. §1030(g), because Rhoney has engaged in intentional acts in violation of the CFAA described in the paragraphs immediately below, which have caused Stage 3 to suffer loss during the preceding year aggregating at least $5,000 in value as required by 18 U.S.C. § 1030(c)(4)(A)(i)(I).

117.    Rhoney has violated the CFAA by intentionally accessing Stage 3's computer network without authorization and/or in excess of his authorization to obtain information from a computer used in interstate commerce in violation of 18 U.S.C. § 1030(a)(2)(C).

118.    Rhoney has violated the CFAA by knowingly and/or with intent to defraud Stage 3, accessed Stage 3's computer network without authorization and/or in excess of his authorization to obtain information from a computer used in interstate commerce. By reason of these acts and conduct, Rhoney furthered the intended wrongdoing by improperly accessing, obtaining, and utilizing valuable information from protected computers for unauthorized purposes in violation of 18 U.S.C. § 1030(a)(4).

119.    Upon information and belief, the information Rhoney obtained from the above-alleged acts and conduct included valuable information relating to Stage 3's business operations, including, but not limited to, confidential information regarding Stage 3's pricing, staffing, business opportunities, and contractors. This critical information is extremely valuable to Stage 3, and would be very valuable to Stage 3's competitors.

120.    Rhoney has caused "damage" within the meaning of the CFAA because, as a direct and proximate result of Rhoney's unauthorized access, the integrity of Stage 3's data and computer system has been compromised as required by 18 U.S.C. § 1030(a)(5)(C). Rhoney used programs such as Ccleaner and a script to clear Prefetch to destroy evidence that he accessed Stage 3's server.

121.    Rhoney has caused "loss" within the meaning of the CFAA, 18 U.S.C. § 1030(e)(11). As a direct and proximate result of the wrongful conduct alleged hereinabove, Stage 3 has incurred losses and costs exceeding $5,000 in violation of 18 U.S.C. § 1030(a)(5)(C).  The total amount of Stage 3's loss will be proved at trial.

122.     Stage 3 lacks an adequate remedy at law and, unless enjoined by this Court, Rhoney will continue to cause irreparable injury and damage to Stage 3 as a result of the wrongful acts complained of herein. As a result of Rhoney's activities, Stage 3 is suffering and will continue to suffer immediate and irreparable harm.

123.     Stage 3 is likely to succeed on the merits of its claims against Rhoney, and the public interest favors stopping Rhoney from engaging in further illegal hacking of Stage 3's Computer Network.

**COUNT II**

**CONVERSION**

124.     Stage 3 repeats and re-alleges the allegations set forth in Paragraphs 1-106 above, as if the same were set forth fully herein.

125.     Stage 3 purchased and owned the Computer.

126.     Rhoney assumed and exercised dominion and control over the Computer to the exclusion of Stage 3.

127.     Rhoney's exercise of dominion and control over the Computer is inconsistent with Stage 3's rights as an owner.

128.     Stage 3 demanded return of the Computer when it terminated Rhoney and through letters from counsel.

129.     Rhoney has refused to return the Computer.

130.     As a result of Rhoney's actions, Stage 3 has suffered damages in an amount to be determined at trial.

131.     Upon information and belief, the Computer contains valuable and confidential Stage 3 information, including information that allows the Computer to access other Stage 3 computers associated with Stage 3's corporate Team Viewer account.

132.     Due to Rhoney's refusal to return the Computer, Stage 3 lacks an adequate remedy at law and, unless enjoined by this Court, Rhoney will continue to cause irreparable injury and damage to Stage 3 as a result of the wrongful acts complained of herein. As a result of Rhoney's activities, Stage 3 is suffering and will continue to suffer immediate and irreparable harm.

133.     Stage 3 is likely to succeed on the merits of its claims against Rhoney and the public interest favors precluding Rhoney from retaining the benefits of his theft.

## COUNT III

## THEFT

134.     Stage 3 repeats and re-alleges the allegations set forth in Paragraphs 1-106 above, as if the same were set forth fully herein.

135.     In violation of the Texas Civil Practice and Remedies Code Title 6, § 134.003, Rhoney has unlawfully appropriated Stage 3's property with the intent to deprive Stage 3 of the Computer and administrator access rights to Team Viewer.

136.     Rhoney acquired and kept the Computer and the access rights without Stage 3's consent.

137.     On information and belief, Rhoney is exercising control over the Computer and the access rights without Stage 3's consent.

138.     Rhoney has refused to return the Computer and the access rights to Stage 3.

139.    Under § 134.005(b), Plaintiff is entitled to recover attorneys' fees and other costs incurred in bringing this action in an amount to be established at trial.

**COUNT IV**

**VIOLATION OF THE STORED COMMUNICATIONS ACT**

140.    Stage 3 repeats and re-alleges the allegations set forth in Paragraphs 1-106 above, as if the same were set forth fully herein.

141.    Stage 3 uses Microsoft Outlook and an exchange server to store its email communications.

142.    Since his termination on October 23, Rhoney has not had any authority to access any Stage 3 Outlook email accounts.

143.    On eight occasions, Rhoney attempted to login to his Stage 3 email account, eventually gaining access to his Stage 3 emails. These emails contain Stage 3 confidential and proprietary information.

144.    Stage 3 has a civil claim against Rhoney under the Stored Communications Act ("**SCA**"), 18 U.S.C. § 2707, because Rhoney has done intentional acts in violation of the SCA described in the paragraphs immediately below.

145.    Rhoney has violated the SCA by intentionally accessing without authorization a facility through which an electronic communication service is provided and thereby obtained access to electronic communications while the electronic communications were in electronic storage in such system in violation of 18 U.S.C. § 2701(a)(1).

146.    Rhoney has intentionally exceeded his authorization to access the facility through which an electronic communication service is provided and thereby obtained access to electronic

communications while the electronic communications were in electronic storage in such system in violation of 18 U.S.C. § 2701(a)(2).

147.    Rhoney has acted willfully, intentionally, and in conscious disregard of the rights of Stage 3.

148.    The actual or threatened destruction of Stage 3's emails by Rhoney entitles Stage 3 to immediate injunctive relief pursuant to 18 U.S.C. § 2707(b)(1).

149.    Stage 3 lacks an adequate remedy at law and, unless enjoined by this Court, Rhoney will continue to cause irreparable injury and damage to Stage 3 as a result of the wrongful acts complained of herein. As a result of Rhoney's activities, Stage 3 is suffering and will continue to suffer immediate and irreparable harm.

150.    Stage 3 is likely to succeed on the merits of its claims against Rhoney. Stage 3 is without an adequate remedy at law for the injuries it continues to sustain as a result of Rhoney's acts and conduct.

151.    The willful and intentional violation by Rhoney entitles Stage 3 to punitive damages pursuant to 18 U.S.C. § 2707(c).

152.    Under 18 U.S.C. § 2707(b)(3), Stage 3 is entitled to attorneys' fees.

## COUNT V

## ABUSE OF PROCESS

153.    Stage 3 repeats and re-alleges the allegations set forth in Paragraphs 1-106 above, as if the same were set forth fully herein.

154.    On December 8, 2017, Rhoney filed, through counsel, a complaint in the District Court for Harris County, Texas ("Texas Complaint"). (See Ex. G).

155.    The Texas Complaint contains a single count for defamation for Stage 3's report to the Houston Police Department.

156.    Although not relevant to defamation, the Texas Complaint details numerous allegations that Stage 3 illegally utilized certain software.

157.    In addition, although not relevant to defamation, the Texas Complaint alleges that Stage 3 discriminated against Rhoney on the basis of disability.

158.    Rhoney's counsel is barred in Texas.

159.    Reports to law enforcement authorities are privileged against defamation. *See Shell Oil Co. v. Writt*, 464 S.W.3d 650 (Tex. 2015) (finding absolute privilege to defamation where company reported criminal conduct of one of its workers to law enforcement authorities).

160.    Rhoney's defamation claim cannot be maintained.

161.    Filing the Texas Complaint is an illegal, improper, or perverted use of process.

162.    Upon information and belief, Rhoney filed the Texas Complaint for the illegal, improper, or perverted purpose(s) of extorting money from Stage 3, forcing Stage 3 to withdraw its criminal complaint to the Houston Police Department, and/or forcing a settlement in this action.

163.    Stage 3 will incur damages as a result of Rhoney's abuse of process, including, but not limited to, attorneys' fees and costs of litigation. Stage 3 will suffer damages in an amount to be proved at trial.

## COUNT VI

## BREACH OF FIDUCIARY DUTY

164.    Stage 3 repeats and re-alleges the allegations set forth in Paragraphs 1-106 above, as if the same were set forth fully herein.

165.    During his employment with Stage 3, Rhoney received confidential information, including, but not limited to, Stage 3's computer network, application, and server passwords.

166.    As an employee of Stage 3, Rhoney had a duty to act primarily for the benefit and Stage 3 and not to use for his own advantage, and to the detriment of Stage 3, confidential information acquired by or imparted to him in the course of his employment.

167.    This duty continued after Rhoney's termination of employment.

168.    Rhoney has used the confidential information acquired by or imparted to him during his employment with Stage 3 to access Stage 3's servers for his own advantage and to the detriment of Stage 3.

169.    Stage 3 lacks an adequate remedy at law and, unless enjoined by this Court, Rhoney will continue to cause irreparable injury and damage to Stage 3 as a result of the wrongful acts complained of herein. As a result of Rhoney's activities, Stage 3 is suffering and will continue to suffer immediate and irreparable harm.

170.    Stage 3 is likely to succeed on the merits of its claims against Rhoney. The public interest favors prohibiting Rhoney from continuing to use stolen passwords and false login credentials to hack in to Stage 3's Computer Network.

171.    As a result of Rhoney's actions, Stage 3 has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Stage 3 Separation, LLC prays that the Court enter judgment:

A. For Plaintiff and against Defendant on each count of the foregoing Complaint;

B. For immediate and permanent injunctive relief prohibiting the access of Stage 3's computer system, and requiring the return of any and all Stage 3 information in

Defendant's possession, custody, or control, including passwords and administrator rights to all Stage 3 applications and networks, and the return of the Computer;

C.  For compensatory and punitive damages, plus interest, in an amount to be proved at trial;

D.  For reasonable attorneys' fees and costs of litigation; and

E.  For such other or further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Stage 3 hereby demands a trial by jury on all claims so triable.


Respectfully submitted this 14th day of December, 2017.

**CHAMBERLAIN HRDLICKA
WHITE WILLIAMS & AUGHTRY**

By:  *s/ Annette A. Idalski*
Annette A. Idalski
Texas Bar No. 00793235
Federal I.D. No. 1130754
191 Peachtree Street, N.E., 46th floor
Atlanta, GA  30303-1747
Telephone:  (404) 658-5386
annette.idalski@chamberlainlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| STAGE 3 SEPARATION, LLC, | ) |
| | ) |
| Plaintiff, | ) DOCKET NO. ___4:17-cv-3787___ |
| | ) |
| v. | ) |
| | ) |
| SCOTT RHONEY, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| _____ | ) |

## DECLARATION OF MATT CARLSON

I, MATT CARLSON, pursuant to 28 U.S.C. § 1746, hereby affirm that I am over 18 years of age and am competent to make the following Declaration.

1.      I am personally familiar with the matters and things contained herein and I authorize the use of this Declaration in connection with the above-captioned lawsuit and for all other purposes allowed by law.

2.      I make this Declaration in support of Stage 3's Verified Complaint and Demand for Jury Trial. ("**Complaint**") and for all other purposes authorized by law.

3.      I am the Vice President of Administration of Stage 3 Separation, LLC.

4.      I have read the Complaint and the factual statements contained therein are based upon my personal knowledge or upon information provided to me by agents, employees, and/or representatives of Stage 3 and/or are contained within the documents maintained by the company and the statements are true and correct.

5.      I am duly authorized to make this verification.

24

Matt Carlson,
Stage 3 Separation, LLC

2700605.5
140756.000006